ALNOR CONSTRUCTION COMPANY, A CORPORATION, PLAINTIFF-APPELLANT, v. HENRY HERCHET AND KATHERINE HERCHET, DEFENDANTS-RESPONDENTS.

ROBERT E. SCOTT AND RUTH E. SCOTT, TRADING AS R. E. SCOTT CO., PLAINTIFFS-APPELLANTS, v. HENRY HERCHET AND KATHERINE HERCHET, DEFEND-ANTS-RESPONDENTS.

Argued May 26, 1952—Decided June 6, 1952.

Mr. *George W. Wolin* argued the causes for appellants.

Mr. *Thomas F. Hueston* argued the causes for respondents.

The opinion of the court was delivered by

HEHER, J. There are two issues here: (1) the vendee's right to specific enforcement of a contract for the sale and conveyance of lands situate in the Borough of Roselle Park, New Jersey; and (2) the brokers' right to compensation for the service rendered in negotiating the sale of the lands as provided in the contract.

The actions were consolidated and assigned for trial to the Chancery Division of the Superior Court.

Specific performance of the contract of sale was refused on the ground that the description of the lands therein given "is such that it cannot be stated with any degree of accuracy what was intended to be conveyed," and it "is not possible" for the court "to say from all of the testimony just what was really intended to be sold." The brokers' contract was read as conditioning the payment of compensation for the stipulated service upon the actual passing of title.

The vendee and the brokers appeal.

I.

The equitable remedy of specific performance is not available unless the contract be certain as well as fair and just in its terms and enforceable without hardship to either party; and the requirement of certainty has reference "both to the description of the property and the estate to be conveyed. Uncertainty as to either, not capable of being removed by extrinsic evidence, is fatal to any suit for a specific performance." *Preston v. Preston*, 95 *U. S.* 200, 24 *L. Ed.* 494 (1877). *Vide Pomeroy's Equity Jurisprudence* (*5th ed.*), *sections* 1404 *et seq.* But there is an essential distinction between the admission of oral extrinsic evidence merely for the purpose of identifying the land described in the writing, if it be a definite description, and adding to a description insufficient on its face. It is one thing to apply the description given in the writing to the land to be conveyed; it is quite another thing to supply a certain description for one vague and indefinite and thus substantially to supplement

the written expression in violation of a fundamental rule of evidence as well as the statute of frauds. The surrounding circumstances may be shown to identify the subject matter, but parol evidence cannot be used to provide a substantive omission in the terms of a written contract. *Naughton v. Elliott*, 68 *N. J. Eq.* 259 (*Ch.* 1905); *Muller v. Brautigan*, 84 *N. J. Eq.* 574 (*Ch.* 1915); *Schwartzman v. Creveling*, 85 *N. J. Eq.* 402 (*Ch.* 1916).

"If the description can be identified by proof of some extraneous fact, that may be done, although, if it be necessary to add a term to the description, that cannot be done. In making this identification we do not go to the oral negotiations, nor to oral proof of what the parties intended. To do this would add to the terms of the memorandum. * * * The description given may be applied by oral proof, so as to ascertain the precise premises conveyed." *Gendleman v. Mongillo*, 96 *Conn.* 541, 114 *A.* 914, 917 (*Sup. Ct. Err., Conn.* 1921).

The writing should "contain a sufficient description to evidence a common intent of the parties to deal with respect to a particular piece of property as distinguished from other property." *Flegel v. Dowling*, 54 *Or.* 40, 102 *Pac.* 178, 180 (*Sup. Ct.* 1909). Of course, different considerations apply where cancellation, reformation, or relief against the operation of the writing is sought for fraud, mistake or surprise. *Wirtz v. Guthrie*, 81 *N. J. Eq.* 271 (*Ch.* 1913); *Vogt v. Mullin*, 82 *N. J. Eq.* 452 (*Ch.* 1914); *Downs v. Jersey Central Power & Light Co.*, 117 *N. J. Eq.* 138 (*E. & A.* 1934). *Vide Pomeroy's Equity Jurisprudence* (*5th ed.*), *sections 857 et seq.*

■ Equity requires a greater degree of certainty in the terms of an agreement submitted for specific performance than is necessary to sustain an action at law for damages. An action at law is founded upon the mere nonperformance by the defendant, and this "negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The mere fact of nonperformance is not enough; its object is to procure a performance by the defendant, and this demands a clear, definite, and precise

understanding of all the terms; they must be exactly ascertained before their performance can be enforced." *Pomeroy's Specific Performance of Contracts* (3*d. ed.*), *section* 159.

Here, the contract describes the lands by metes and bounds. The bargain comprehended but a part of the lands owned by the vendor; and it would seem that there was not a meeting of the minds upon the same matter, *i. e.*, the portion to be conveyed. It was stipulated in the writing that the "description is subject to any change that an accurate survey may disclose," and that the parties "agree to convey title by accurate metes and bounds description, which shall be in accordance with an accurate survey of the property." The vendee was not willing to take a conveyance of the lands as described in the contract. It tendered performance according to a description made by surveyors, Grassman & Kreh; but the vendor rejected this description as inclusive of land beyond that covered by the bargain and the description given in the writing. Thereby, the vendor would convey more land than he had intended, some "30 or 40 feet." The vendor suggests that he and the vendee were in agreement as to the *quantum* of the land to be conveyed. Before the execution of the contract of sale, he said, the vendee asked for an additional 13 feet, but he replied that he needed "every inch" of the remaining land for the laying out of a street and he would not sell "an inch for $1,000." To return to the negotiations for a consummation of the contract, the vendee insisted upon the conveyance of an "additional" 20 feet of land; the vendor refused the demand, and offered a deed in accordance with his conception of their common understanding. The result was a notice by the vendee making time of the essence, and the institution of this suit when the vendor refused to convey by the vendee's description. Grassman & Kreh's engineer and surveyor, Fuhrmann, testified that he could not survey the land as described in the contract "without some supporting information." The difficulty lay with the third course of the description given in the contract—"thence running in an arc in a westerly direction

approximately 230' to a point." The course which "cites the arc" he said, "does not give a radius": and "in order to establish the arc," he would need "to know the radius"; he "wouldn't know how to make an arc, a sharp one or a very flat one." Thus, the description given is so uncertain and indefinite as to render the contract incapable of a specific execution. The lines and dimensions of the land are not ascertainable. This is a fundamental deficiency that precludes an efficient decree for a specific performance.

It is suggested, finally, that there be a decree for enforcement of the contract providing "a compensatory enlargement of the purchase price for the additional land, if any, taken by the new survey."

But the remedial right of specific performance is purely equitable; and there is no equity in the vendee which would justify, even for an adequate consideration, a compulsory conveyance by the vendor of lands which he had not agreed to sell.

## II.

The brokers' claim for the stipulated commission is likewise untenable.

The contract of sale embodied a provision obliging the vendor to pay the brokers "a commission of $1,000 on the purchase price aforesaid, said commission to be paid in consideration of services rendered in consummating this sale; said commission to become due and payable upon the execution of this agreement"; and directing "the closing attorney or attorneys to withhold the same from the closing funds at passing of title if not sooner paid." But there was also a contemporaneous "Supplemental Agreement," in the form of a letter dated March 31, 1950, signed by the vendor, in language following:

"For and in consideration of the sum of $1.00, to us in hand paid, receipt whereof is hereby acknowledged, and further in consideration of your services in negotiating the sale of our property in Roselle Park, New Jersey, as described in .the contract of sale between us

and Alnor Construction Co., Inc., we agree to pay you as and for your services the total commission of $1,000 in the following manner: 1. $333.33 upon passing of title. 2. $333.33 upon the release of four lots from the blanket mortgage to be taken by us. 3. $333.34 upon the release of four additional lots from the said blanket mortgage."

The pretrial order acknowledged that the letter constituted a "part" of the contract. Therein, the issue was stated thus: The right of the brokers "to recover the $1,000 shall be determined in the following manner: the jury shall decide whether or not the defendants are justified in refusing to carry out the contract on the ground that the purchasers insist upon receiving more land than the contract calls for, and this is not just a matter of survey difference, but a substantial amount of land."

It is fundamental that the brokers' right to the stipulated commission is measured by the terms of the contract. Ordinarily, barring a definite expression *contra,* the commission is earned when the broker has, pursuant to his employment and within the given time, procured a purchaser ready, able and willing to buy the lands on the terms and conditions authorized by the contract of employment or accepted by the principal. In that event, the principal cannot defeat the agent's right to compensation by a refusal, without sufficient reason, to fulfill the agreement which the agent was empowered to make. This rule rests upon general usage; and it may be modified or superseded by a special usage in relation to the particular transaction, or by a special agreement between the parties. *Hinds v. Henry,* 36 *N. J. L.* 328 (*Sup. Ct.* 1873); *Owen v. Riddle,* 81 *N. J. L.* 546 (*E. & A.* 1911); *Freeman v. Van Wagenen,* 90 *N. J. L.* 358 (*Sup. Ct.* 1917); *Steinberg v. Mindlin,* 96 *N. J. L.* 206 (*E. & A.* 1921); *Feist & Feist, Inc., v. Taub,* 105 *N. J. L.* 237 (*E. & A.* 1928); *Ganley v. Kalikman,* 105 *N. J. L.* 311 (*Sup. Ct.* 1929), affirmed 106 *N. J. L.* 237 (*E. & A.* 1929); *Doe v. Eggleston,* 106 *N. J. L.* 565 (*E. & A.* 1929); *Braelow v. Louis Schlesinger, Inc.,* 109 *N. J. Eq.* 472 (*Ch.* 1932), affirmed 112 *N. J. Eq.* 88 (*E. & A.* 1933). As in the case of

other integrated contracts, we are enjoined to effect the common intention expressed by the parties in the memorial of their bargain. The standard of interpretation is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the writing, other than oral statements by the parties of what they intended it to mean, except where it produces an ambiguous result, or is excluded by rule of law establishing a definite meaning. This is a primary rule of interpretation which is always applicable, whether the writing seems clear or ambiguous. *Corn Exchange National Bank and Trust Co., Philadelphia, v. Taubel,* 113 *N. J. L.* 605 (*E. & A.* 1934).

So assessed, the integration here, considered as a whole, evinces an intent to make the consummation of the negotiated contract of sale a *sine qua non* to the recovery of the stipulated compensation. The cited clause of the contract of sale itself providing for the payment of the fixed sum "in consideration of services rendered in consummating" the sale, "to become due and payable upon the execution of this agreement," however it may be viewed standing alone, is to be assayed in the light of the associated contemporaneous provision for the payment of the stipulated compensation in three equal installments, *i. e.,* the first "upon passing of title"; the second "upon the release of four lots from the blanket mortgage to be taken by the vendor"; and the third "upon the release of four additional lots from the said blanket mortgage." The consummation of the conveyance was thereby made a condition precedent to performance of the principal's promise to pay the agreed compensation. The principal's conditional promise was not to become absolute unless the condition was fulfilled or the principal was responsible for its nonperformance. This is the indubitable significance of the writings, taken and compared together. Compare *Leschziner v. Bauman,* 83 *N. J. L.* 743 (*E. & A.* 1912); *Lippincott v. Content,* 123 *N. J. L.* 277 (*E. & A.* 1939). The parties

were speaking of the "execution" of "this agreement" in the sense of its consummation by a conveyance of the lands.

The judgment in these consolidated causes is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.