177 N.J. Super. 79 (1980)
424 A.2d 1199
ARTHUR L. CLAY, DAVID SCHULMAN (DAVAL ASSOCIATES), AND ALAN SCHULMAN (PROGRESSIVE REALTY MANAGEMENT CO.), APPELLANTS,
v.
CITY OF EAST ORANGE, PHILLIP T. MORRIS, VIRGINIA WHITE, AND GUS ELMORE, RESPONDENTS.
Superior Court of New Jersey, Law Division Essex County.
Decided August 28, 1980.
*80 Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer, P.A., for appellants (H. Neil Broder appearing).
Ernest R. Booker, Assistant City Counsel of East Orange, for respondents.
HOPKINS, J.T.C. (temporarily assigned).
This is a consolidated appeal from municipal court judgments entered as a result of the finding that appellants, insofar as the City of East Orange was concerned, were liable for penalties of $100 each, pursuant to N.J.S.A. 54:4-6.12, for failure to provide property tax rebates to three tenants. Judgments were also entered in favor of three individual tenants in the amount of $100 each, pursuant to N.J.S.A. 54:4-6.11, for failure of appellants to provide property tax rebates to those tenants.
The matters were consolidated for appeal, as the facts and principles of law are equally applicable to each individual action.
*81 Appellants allege that the municipal judge failed to take into consideration that the reduction in property taxes for 1979, which gave rise to the disputed rebates, was, in major part, applicable to a separate billing during that year for sewerage services. Their position is that since East Orange had included the sewer services charge in their tax bill for the base year 1976, the computation of a property tax rebate should reflect an adjustment for such divergent treatment by East Orange during 1979.
N.J.S.A. 54:4-6.2 et seq., known as the Tenants' Property Tax Rebate Act, provides that a landlord owning qualified real rental property must share with the tenants any saving which results from a reduction in local property taxes. Under normal circumstances the base year, for the purpose of determining whether there was a local property tax reduction, was 1976.
East Orange is a member of two federally-aided sewer facilities known as the Passaic Valley Sewerage Commission and the Edward T. Decker Waste Water Treatment Facility. These organizations supply sewerage service to East Orange. During 1976 East Orange included the cost of these services as part of its municipal budget and, as such, the cost was included in determining the 1976 local property taxes. In 1979, pursuant to a claimed mandate from the Federal Government, East Orange did not include the sewerage service cost in its municipal budget. Rather, it billed each property owner separately on the basis of the number of units involved. A single-family dwelling would be one unit while an apartment building would be treated as having one unit for each apartment. As a consequence of the separate billings for sewerage services, the local property taxes for 1979 were less than the taxes paid in 1976, the base year with respect to the Rebate Act.
As a result of the difference in the taxes billed for 1976 and 1979, appellants were notified by the tax collector for East Orange that there was a rebate payable to the tenants. The landlords, in turn, notified the tax collector that no rebate was *82 to be paid, because the combination of the tax billing for 1979 and the separately billed sewerage services charges during 1979, when subtracted from the 1976 base year tax, did not result in a tax reduction which required a rebate to the tenants.
East Orange then commenced an action in the Municipal Court of East Orange, pursuant to N.J.S.A. 54:4-6.12, which provided that a landlord who fails to provide property tax rebates in accordance with the provisions of the act shall be liable for a penalty of no more than $100 for each offense. At the same time, the individual defendants herein commenced an action pursuant to N.J.S.A. 54:4-6.11 which provides that a property owner who fails to provide a tenant with the property tax rebate in accordance with the provisions of the act shall be liable to the tenant for twice the amount of the property tax rebate to which the tenant was entitled, or $100, whichever is greater. Judgments were entered against appellants in favor of East Orange for $100 each and in favor of each of the individual tenants for $100 each.
On appeal appellants have taken the position, as they did in the municipal court proceeding, that the segregation of sewerage charges from the normal property tax billing cannot be utilized to produce an artificial reduction in the property tax for the purpose of the Rebate Act. Respondents, on the other hand, have taken the position that the Rebate Act, which became effective in 1976 and was amended in 1977, was enacted and amended by the Legislature with full knowledge by that body that a municipality could separately bill for sewerage charges. This being so, it opts for a literal reading which would require a rebate under the circumstances under review.
The parties have supplemented the record by stipulations of facts enabling the court to find as follows:
1. If the separately billed sewerage service charges are to be ignored for the purpose of determining a tenant rebate, then the total amount properly payable to the respective tenants would be as follows:

*83
 Number of Average
 Total Tenants Per Tenant
 Progressive $3,185.00 132 $24.12
 Clay 972.00 41 23.71
 Daval 958.69 48 19.97
 _________
 Total-$5,115.69

2. If the 1979 sewerage service charges were to be combined with the 1979 local property tax, there would be no rebate payable to the respective tenants.
3. If the local property tax paid for 1976 is adjusted by removing therefrom the sewerage service charges included in the municipal budget for that year and such adjusted base year tax is utilized, then the rebates payable for 1979 are as follows:

 Total Number of Average
 Rebate Tenants Per Tenant
 Progressive $3,140.80 132 $23.79
 Clay 871.29 41 $21.25
 Daval 859.31 48 $17.90
 _________
 Total ... $4,871.40

In 1975 our State Constitution was amended to authorize the legislature to pass a homestead statute which, among other things, would entitle a residential tenant to a rebate or a credit related to property taxes. See N.J.Const. (1947), Art. VIII, § I, par. 5. In 1976 the Legislature enacted the Tenants' Property Tax Rebate Act as well as the companion Homestead Rebate Act, N.J.S.A. 54:4-3.80 et seq., as part of a program having as its base the anticipated passage of the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq. The enactment of the Gross Income Tax Act with the provision that the income taxes collected shall constitute a Property Tax Relief Fund was the implementation of a political philosophy to provide relief to local property taxpayers. See N.J.S.A. 54A:9-25.
*84 The Tenants' Property Tax Rebate Act was held to be a constitutional implementation of social legislation in the form of economic regulation. Cold Indian Springs Corp. v. Ocean Tp., 81 N.J. 502 (1980).
In changing its method of collecting funds to satisfy the sewerage service charges to which it was committed, East Orange was acting consistent with N.J.S.A. 40:63-7, which provides that the governing body may, by ordinance, prescribe the charges for the use of sewers. Crowe v. Sparta Tp., 106 N.J. Super. 204 (App.Div. 1969), certif. den. 55 N.J. 79 (1969). Indeed, sewerage service charges have been held not to be a "tax" or a "special assessment." Jersey City Sewerage Auth. v. Jersey City Housing Auth., 40 N.J. 145 (1963).
In statutory construction it is important that the policy consideration of the legislation be kept in mind. This was specifically noted in New Capital Bar & Grill Corp. v. Div. of Employment Security, 25 N.J. 155 (1957), where in construing N.J.S.A. 43:21-19(h)(2), the court stated:
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378 (1956); Wright v. Vogt, 7 N.J. 1, 6 (1951); Glick v. Trustees of Free Public Library, 2 N.J. 579, 584 (1949). Additionally, the statute before us is remedial and should be liberally construed to accomplish the social aim of Legislature. Campbell Soup Co. v. Board of Review, Division of Employment Security, 13 N.J. 431 (1953). [at 160]
See, also, Robson v. Rodriquez, 26 N.J. 517, 528 (1958); Clifton v. Passaic Tax Bd., 28 N.J. 411, 421 (1958).
While the above principles would preclude a construction which would ignore the separate billing for sewerage services, the position of defendants that such charges should be combined with the property tax in order to compute the amount of a rebate would, in fact, continue to treat the sewerage service *85 charge as a tax. This is inconsistent with Jersey City Sewerage Auth. v. Jersey City Housing Auth., supra. Since the sewerage service charge is, in fact, a utility charge rather than a tax, and since it is computed in a manner entirely different from local property tax, i.e., by units rather than on the basis of local property tax assessed values, it would be more appropriate to interpret N.J.S.A. 54:4-6.3(b), which defines "property tax reduction," to exclude from the base year tax any portion attributable to sewer service charges for such year. This construction would implement the philosophy of the act by requiring rebates when "taxes" are reduced by virtue of the municipality's participation in the fund derived from the gross income tax, and not interject utility charges into the computation. When legislative intention can be ascertained with reasonable certainty, words may be altered or supplied in order to effectuate that intention and to avoid any repugnancy or inconsistency therewith. Robson v. Rodriquez, supra, 26 N.J. at 528; Orvil v. Woodcliff, 64 N.J.L. 286, 289 (E. & A. 1900).
The above construction results in tenant rebates being required for 1979. However, the question remains as to whether appellants are liable for the penalty judgments here involved.
As hereinbefore detailed, the act does not specifically cover a factual situation such as the one under review. Indeed, it was only through statutory construction which, in looking at the total legislative package of which the Rebate Act was a part, that the act has been construed to require rebates. Appellants' position that the sewerage charge should be combined with the local property tax in the rebate computation was not an unreasonable position. Indeed, it properly recognized that the separate treatment of the sewerage charges would have to be taken into consideration in determining the rebate.
It is also recognized that the penalties could, indeed, be quite harsh. The subject properties contain a total of 221 tenants. *86 Sustaining the penalties could result in appellants being collectively liable to the City of East Orange, pursuant to N.J.S.A. 54:4-6.12, in the total amount of $22,100. Correspondingly, they could also be liable to the tenants collectively for an equal amount rather than the total of $4,871.40, as concluded herein.
It has long been a law of this State that suits for penalties must always be construed strictly according to their clear intendment. Sawran v. Lennon, 19 N.J. 606, 613 (1955). In that case there was quoted with approval a passage from Wharton, Criminal Law (12 ed.), § 40, which read as follows:
In construing such statutes, however, we are to look for their reasonable sense, and if this is clearly ascertained it must be applied, though a narrower sense is possible. The courts are, on the one hand, to refuse "by any mere verbal nicety, forced construction, or equitable interpretation, to exonerate parties plainly within their scope." At the same time, in matters of reasonable doubt, this doubt is to tell in favor of liberty and life.
In construing the penalty provisions of the statutes under review, it is noted that both statutes provide that the penalty provisions will apply when a landlord fails to provide a tax rebate "in accordance with the provisions of this act."
However, the provisions of the act were far from clear in its application to the facts under review. Where such ambiguity exists, there existed extenuating circumstances which would preclude the application of the penalties at this time.
Accordingly, the municipal court judgments are reversed without prejudice to respondents to reinstate similar actions in the event that, absent an appeal, the appellants fail to implement the required tenant rebates within 60 days from the entry of judgment. Such time limit is 15 days longer than the appeal period.