LILLIAN TOBIAS, AN INDIVIDUAL, T/A WAY COUNTRY PROPERTY, PLAINTIFF-APPELLANT, v. COMCO/AMERICA, INC., A NEW JERSEY CORPORATION, SMOKE RISE DEVELOPMENT CO., A NEW JERSEY CORPORATION, GEORGE BASTAMOV, AN INDIVIDUAL, ALEXANDER NEU, AN INDIVIDUAL, LAWRENCE WONG, AN INDIVIDUAL, SMOKE RISE REALTY COMPANY, A TRUST, MARK EAGLE, AN INDIVIDUAL, DEFENDANTS-RESPONDENTS.

Argued October 25, 1983—Decided May 16, 1984.

174

*Richard L. Plotkin* argued the cause for appellant (*Pitney, Hardin, Kipp & Szuch,* attorneys; *Richard L. Plotkin, David F. Salvaggio* and *Evelyn R. Storch,* on the brief).

*Frederick C. Kentz, III,* argued the cause for respondents Smoke Rise Realty Company and Mark Eagle (*Crummy, Del Deo, Dolan & Purcell,* attorneys).

*Ladislas F. Feher,* on behalf of respondent Alexander Neu, relied upon the brief and argument for respondents Smoke Rise Realty Company, et al.

*Mark E. Wiener,* on behalf of Comco/America, Inc., Smoke Rise Development Co., etc., and George Bastamov, relied upon the brief and argument for respondents Smoke Rise Realty Company, et al.

*John G. D'Angelo,* on behalf of Lawrence Wong, relied upon the brief and argument for respondents Smoke Rise Realty Company, et al. (*D'Angelo & Clemack,* attorneys).

*Elise Goldblatt,* Deputy Attorney General, submitted a brief on behalf of *amicus curiae* New Jersey Real Estate Commission (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

· POLLOCK, J.

The narrow question presented on this appeal is whether plaintiff, a licensed real estate broker, can recover a commission under *N.J.S.A.* 45:15–3 when the salesman in her employ, her husband, was unlicensed at the time he performed substantial services leading to the sale that is the basis for the commission.

The trial court granted defendants' motion for summary judgment dismissing the complaint. The court held that the statute does not permit a licensed broker to recover a commission based on a sales contract that resulted largely from an unlicensed salesman's efforts. In an unreported decision, the Appellate Division affirmed.

We granted certification, 93 *N.J.* 277 (1983). We now hold that under the singular facts of this case the salesman acted in good faith and substantially complied with the statutory licensing requirements. The broker, therefore, may maintain an action for her commission. Consequently, we reverse the judgment of the Appellate Division and remand the matter to the trial court.

## I

Because the matter is presented on defendants' motion for summary judgment, we assume the facts as asserted by plaintiff are true and give her the benefit of all inferences that may be drawn in her favor. *R.* 4:46–2; *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 61 (1980). Based on that assumption, the following facts emerge.

Plaintiff, Lillian Tobias, is a licensed New Jersey real estate broker trading under the name of Way Country Property, Scotch Plains, New Jersey. Her husband, Melvin Tobias, was a licensed New Jersey real estate salesman for twenty years until July 1978 when, because of a heart attack, he allowed his license to expire.

Defendants Alexander Neu and George Bastamov, principals of defendants Comco/America, Inc. (Comco) and Smoke Rise Development Co. (Development), first spoke to Mrs. Tobias in 1979. They sought her services in selling a tract of approximately 1555 acres, known as Smoke Rise, located in Kinnelon, New Jersey. The parties signed a commission agreement and Mrs. Tobias found a potential purchaser. For reasons not disclosed on the record, however, the sale was not consummated.

Still seeking to sell Smoke Rise, Bastamov and Neu spoke with Mrs. Tobias at her residence in Florida in February 1980. She asked her husband to renew his salesman's license so that he could become involved in the sale. In compliance with the statutory requirement for renewing his license, *N.J.S.A.* 45:15–9, Mr. Tobias mailed to the New Jersey Real Estate Commission (NJRC) on February 28, 1980 the completed application and a check in payment of the $20 application fee. The check was drawn on a rarely used account and was eventually dishonored because of insufficient funds.

One month later, during March 1980, Mr. and Mrs. Tobias began performing substantial services in connection with the sale of Smoke Rise. Mr. Tobias spoke with Lawrence Paraga-

no, a builder and prospective purchaser, who suggested that Lawrence Wong, a real estate developer and accountant, might be interested in acquiring the property. On March 28, 1980, Mrs. Tobias negotiated a commission agreement with Comco, providing for a 10% commission on the sale of Smoke Rise to either Mr. Paragano or Mr. Wong. On April 18, 1980, Mr. Tobias, upon authorization of Mrs. Tobias, and Comco signed an identical commission agreement with an expiration date of October 18, 1980.

Although the record is unclear about the amount of time Mr. and Mrs. Tobias spent in New Jersey between February and May 1980, apparently Mrs. Tobias briefly returned to this State in March. Early in May, both Mr. and Mrs. Tobias returned to New Jersey. Following their return, Mrs. Tobias frequently visited Comco's offices. In mid-May, Mr. Tobias, with his wife's approval and accompanied by Bastamov and Neu, showed the property to Mr. Wong and his associates. Later in May, Mrs. Tobias discovered that Mr. Tobias' license had not arrived at her office. Thereafter, Mr. Tobias performed no services as a real estate salesman in connection with the sale of Smoke Rise, but he "kept apprised of the status of the negotiations" through telephone conversations with Bastamov and Wong.

As soon as Mrs. Tobias learned that her husband's license had not arrived, she immediately notified that NJRC, which informed her to take no action until it mailed out its supplemental renewal list on June 15, 1980. When that list was published, it did not include her husband's name. Mrs. Tobias then obtained a new application, which Mr. Tobias completed and submitted with a valid check. The license was issued one month later on July 29, 1980.

In the interim between May 1980, when Mr. Tobias showed the property to Mr. Wong, and July 29, 1980, Mr. Tobias did not perform any significant services with respect to the sale of the property. After his license was renewed, however, Mr. and

Mrs. Tobias met with Wong and Bastamov in September 1980 to discuss the sale of Smoke Rise. Toward the end of that month, after more negotiations, Mr. Tobias, accompanied by Mrs. Tobias, hand-delivered to Mr. Wong in his office in New York City a proposal from Mr. Bastamov.

As the October 18th expiration date of the commission agreement approached, Mrs. Tobias sought confirmation that she would receive her commission if the property was ultimately purchased by Wong and his associates. Comco provided the confirmation in a letter signed by Bastamov, dated October 21, 1980, stating it would recognize Mr. Wong as their client. On the same day, Comco sent a mailgram authorizing Mrs. Tobias to offer the property to "Wong, *et al*" under specific terms and conditions. On the following day, Mr. Tobias communicated this fact to Mr. Wong, who advised Mr. Tobias that he was no longer interested in purchasing Smoke Rise.

In spite of Mr. Wong's asserted lack of interest in the property, negotiations had been transpiring for approximately a month between Bastamov and Mark Eagle, trustee of a trust known as Smoke Rise Realty Property. Mr. Wong was closely involved with the trust, having lent it money and having guaranteed payment of a fee to Bastamov for "consulting services" in connection with the sale of Smoke Rise. In return, the trust gave Mr. Wong a power of attorney to sign checks on its behalf and designated him as the "developer" of the property. This designation entitled him to purchase parcels of land from the trust whenever he desired.

On January 2, 1981, the trust agreed to buy the property from Comco and Development for $1.7 million. Although defendants deny that the trust was a "straw man" for Mr. Wong, they conceded for purposes of this motion that Wong was the purchaser of the property. The closing occurred on March 12, 1981. Bastamov received $379,219.60 for his "consulting services," but no broker received a commission on the sale. Short-

ly after the closing, Mrs. Tobias instituted suit to recover a 10% commission of $207,921.96, plus interest and costs.

## II

The basic policy of the real estate license act is to protect consumers by excluding "undesirable, unscrupulous and dishonest persons * * * from the real estate business." Statement to Assembly Bill 143 (1921), *quoted in Kazmer-Standish Consultants v. Schoeffel Instrument Corp.*, 89 *N.J.* 286, 290 (1982). One way the statute achieves its purpose is by excluding people who are unqualified and do not have good moral character. *N.J.S.A.* 45:15–9.

Enforcement of the act is reposed in the NJRC which, among other duties, examines applicants and grants licenses, which may be renewed merely by paying the appropriate fee. *N.J. S.A.* 45:15–10. The NJRC also conducts investigations of the actions of any real estate broker or salesman. *N.J.S.A.* 45:15–17. It may place a licensee on probation, revoke or suspend a license, and impose a fine up to $1,000 for a first offense or $2,000 for a subsequent violation. *Id.*

The act defines a "real estate broker" as one who for a commission "sells * * * or attempts to negotiate a sale of real estate," and a "real estate salesman" as one who "is employed by and operates under the supervision of a licensed real estate broker to sell or offer to sell * * * real estate." *N.J.S.A.* 45:15–3. In its final paragraph, *N.J.S.A.* 45:15–3 provides:

No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose.

By its express terms, the statute bars a real estate broker, but not a salesman, from maintaining a suit for a commission unless the broker was licensed "at the time the alleged cause of action arose." A possible explanation for the omission is that a salesman may not maintain an action in his own right, but must

look to the broker by whom he is employed for payment of a commission. *N.J.S.A.* 45:15–16.

■ Thus, one who has passed the broker's exam, but has not yet received his broker's license at the time he procures a purchaser, is barred from recovering a commission. *Rosenthal v. Art Metal Inc.*, 95 *N.J.Super.* 8 (Law Div.1967), *aff'd*, 101 *N.J.Super.* 156 (App.Div.1968), *aff'd o.b.*, 53 *N.J.* 344 (1969). In *Rosenthal*, the broker procured a purchaser with full knowledge that he was contravening the statutory requirement that he be in possession of his license. *N.J.S.A.* 45:15–10. He neither acted in good faith nor substantially complied with the statute.

■ Although the express terms of the act preclude only an unlicensed broker from maintaining an action, it would defeat the legislative purpose to permit a licensed broker to recover a commission for the acts of an unlicensed sales person. On the other hand, participation by an unlicensed out-of-state broker in producing a sale by a licensed New Jersey broker will not preclude the New Jersey broker from maintaining a cause of action for his share of the commission. *Tanenbaum v. Sylvan Builders, Inc.*, 29 *N.J.* 63 (1959).

■ This case presents a question not confronted in *Rosenthal*, whether a broker who is licensed may maintain an action for a commission if the salesman was unlicensed at the time he performed substantial services that produced a sale. We agree with the NJRC, from which we requested a brief following oral argument, that to maintain an action for a commission a broker must have been licensed when the cause of action arose and must establish entitlement to a commission without reference to unlawful conduct of salespersons. Furthermore, mere good faith of an unlicensed broker, although relevant, is not dispositive. The facts of this case, however, show more than good faith.

■ Here, the salesman, Mr. Tobias, had been licensed for twenty years and was merely seeking renewal of his license, which because of a heart attack he had allowed to lapse. He filed the appropriate application together with a check, which inadvertently was drawn on an account with insufficient funds, to pay the filing fee. In his transaction with the defendants, he acted in good faith with the reasonable belief that the license had been issued. *Cf. Tackett v. Mullins*, 612 *S.W.*2d 909, 912 (Sup.Ct.Tenn.1981) (affiliated broker's actions "in good faith" reliance on his temporary license will not preclude his broker from suing for a commission). When Mr. Tobias discovered his license had not been renewed, a new check was drawn, and NJRC issued a renewed license as a matter of course on July 29, 1980. In the interim, Mr. Tobias did not perform any services in connection with the sale of Smoke Rise, and at all times his actions as a salesman were supervised by the broker, his wife. Under the unique facts of this case, we conclude that the salesman acted in good faith and substantially complied with the terms of the act. Thus, the salesman's conduct here is distinguishable from that of the broker in *Rosenthal.*

Defendants appear to be sophisticated businessmen experienced in real estate transactions. From that perspective, foreclosing plaintiff from maintaining her cause of action would frustrate rather than fulfill the purpose of the act, the protection of consumers from unscrupulous brokers. *Kazmer-Standish Consultants v. Schoeffel Instrument Corp., supra,* 89 *N.J.* at 290. Dismissal of the complaint would convert the statute from a shield to protect the public into a sword to cut off a broker's right to an earned commission.

Our decision is not that a broker may generally maintain a cause of action for a commission predicated upon the acts of an unlicensed salesperson. In this case, however, the salesman, acting in good faith, substantially complied with the statute, and his conduct was deficient only in the most hypertechnical sense. On these facts, we doubt that the Legislature intended to bar the broker from her day in court. The impact of our

decision is to open the courthouse door so plaintiff may have that day. We take no position on the ultimate outcome of the case.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court.

*For reversal and remandment* —Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.