**593 A.2d 799**

M.P., AN INFANT BY HIS GUARDIAN AD LITEM D.P., AND D.P.,
INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. WEE CARE
DAY NURSERY OF MAPLEWOOD AND SO. ORANGE, INC.,
ARLENE SPECTOR, DIANE COSTA, JOHN DOES AND JANE
DOE (FICTITIOUS PERSONS), DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted April 22, 1991—Decided July 5, 1991.

120

Before J.H. COLEMAN, DREIER and LANDAU, Judges.

*Casella, Carducci, McMichael & Moylen,* attorneys for appellants (*Gary Wm. Moylen,* of counsel and on the brief).

*Methfessel & Werbel,* attorneys for respondent Wee Care (*Stephen G. Sweet* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

On leave granted, plaintiffs M.P., an infant by his guardian *ad litem,* D.P., and D.P. individually, appeal an *in limine* order entered in their civil action against defendant-respondent Wee Care Day Nursery of Maplewood and So. Orange, Inc. (Wee Care), and the other captioned defendants-respondents.

Plaintiffs are seeking damages for negligent supervision and sexual abuse of the infant plaintiff by a nursery teacher, Margaret Kelly Michaels, during the 1984–1985 school year when M.P. was four years of age. We granted plaintiffs' motion for leave to appeal a determination by the trial judge that the tender years hearsay exception embodied in *Evid.R.* 63(33) [1] is not applicable to this non-criminal proceeding.

M.P.'s civil case had been stayed pending conclusion of a criminal trial which commenced in June 1987, in which defendant-respondent's teacher, Michaels, was convicted of 115 counts of aggravated sexual assault, sexual assault, and endangering the welfare of a child, involving a number of Wee-Care's enrollees, including M.P. That conviction is presently on appeal.

"Tender years" testimony by M.P.'s mother, D.P., was admitted at the criminal trial under the then vital authority of *State v. D.R.*, 214 *N.J.Super.* 278, 518 *A.*2d 1122 (App.Div.1986), *rev'd*, 109 *N.J.* 348, 537 *A.*2d 667 (1988). D.P. related statements made to her by M.P. regarding various improper sexual acts committed upon him by Michaels. Both D.P. and M.P. (then six) testified at the criminal trial and were cross-examined.

---

[1]*Evid.R* 63(33) provides:

> A statement by a child under the age of 12 relating to a sexual offense under the Code of Criminal Justice committed on, with, or against that child is admissible in a criminal proceeding brought against a defendant for the commission of such offense if (a) the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement at such time as to provide him with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 8(1), that on the basis of the time, content, and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirement of paragraph (b) of Rule 17.

 Following completion of the criminal trial, the stay previously in effect was lifted, and the *in limine* ruling here under appeal was made. Essentially Judge Neagle ruled that D.P.'s "tender years" hearsay testimony respecting M.P.'s statements must be barred in that the *Evid.R.* 63(33) exception states only that such a statement "is admissible in a criminal proceeding brought against a defendant for the commission of such offense ..." He reasoned that *Evid.R.* 63(33) could be applied only in a criminal proceeding.

The trial judge's caution is understandable. In reversing *State v. D.R., supra,* the Supreme Court specifically emphasized that, given the serious and far-reaching nature of the hearsay exception there created, comity required invocation of the concurrence procedures established by the Evidence Act of 1960, *N.J.S.A.* 2A:84A–33 to –44, rather than approval of a new judicially established common law hearsay exception. *State v. D.R.,* 109 *N.J.* 348, 375–76, 537 *A.*2d 667 (1988). *Evid.R.* 63(33) was adopted thereafter, in the form proposed by the Supreme Court in *D.R., supra,* 109 *N.J.* at 378, 537 *A.*2d 667, which, as Judge Neagle noted, used the words "in a criminal proceeding" after stating the exception.

The issue here, however, does not involve judicial creation of a new evidence rule, but interpretation of *Evid.R.* 66(33) in a manner which avoids otherwise anomalous and inconsistent results, and which effectuates its purpose.

 No less than legislated statutes, rules of evidence must be interpreted to avoid injustice and to conform to the spirit and intention of the drafters. Where an incongruous and inconsistent result is achieved by adherence to the strict letter of a statute, the policy that is implied is as effective as that which is expressed. *Leitner v. Citizens Casaulty Co. of N.Y.,* 135 *N.J.L.* 608, 52 *A.*2d 687 (E. & A.1947). *See also Clay v. East Orange,* 177 *N.J.Super.* 79, 424 *A.*2d 1199 (Law Div.1980), *aff'd,* 181 *N.J.Super.* 40, 436 *A.*2d 553 (App.Div.1981); *aff'd,* 91 *N.J.* 429, 452 *A.*2d 1323 (1982); *Glick v. Trustees of Free Public*

*Library,* 2 *N.J.* 579, 67 *A.*2d 463 (1949). Such an exercise of a court's power of interpretation, however, is limited; when no ambiguities, inconsistencies or anomalies are presented by statutory language, a court should delve no further than an act's literal terms to divine legislative intent. *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982).

The question then is whether the limiting words "in a criminal proceeding" as used in *Evid.R.* 63(33) are so unambiguous and free of inconsistency as to require literal enforcement, or whether, in the present context, literal enforcement will lead to evidence results which are internally inconsistent and in contravention of the drafters' intent. We believe that the latter consequences are produced by the *in limine* order under review, and so reverse and remand.

We note first that under our Rules of Evidence, a defendant can be convicted on the strength of an admissible *Evid.R.* 63(33) statement, and that the conviction is then admissible in a civil matter to prove any essential fact. *Evid.R.* 63(20). If the conviction itself can be received in evidence in the civil matter as proof of a fact, we question an interpretation of *Evid.R.* 63(33) which would preclude use of the very statement upon which that conviction was based.

If *Evid.R.* 63(33) were to be so construed, one who assaulted a child could be jailed based upon the child's statement, but the child denied compensatory damages for want of proof. If a father was convicted of raping his daughter, her custody pending appeal, a civil issue, might have to be determined without use of her statement to another admissible only in the criminal case. We doubt that such incongruous results were intended in drafting *Evid.R.* 63(33).

Moreover, it must be recognized that the tort action here brought by appellants seeks damages principally related to the alleged direct and forcible actions of the nursery teacher, Michaels. The roots of such an action are historically intertwined with those of the criminal prosecution itself:

> No one could bring an action in the King's common law courts without the King's writ....
>
> The action of trespass, which first emerged in the thirteenth century, had a basic criminal character. It was directed at serious and forcible breaches of the King's peace, and it was upon this basis that the royal courts assumed jurisdiction over the wrong. They were concerned primarily with punishment of the crime; when convicted of trespass, the defendant was fined, and was subject to imprisonment if the fine was not paid. It was in connection with this criminal proceeding that damages first came to be awarded incidentally to the injured plaintiff.

Prosser and Keeton, *Torts* § 6, at 29 (5th ed.1984).

In modern law, the notion of punishment for a wrongdoer's intentional or purposeful assaultive conduct remains a common link between the criminal prosecution and the tort remedy for what was historically remedied by an action in trespass.[2]

Thus, there is no objective apparent to us which might support the drafters' intention to prefer an interpretation of *Evid.R.* 63(33) which permits use of the tender years' statement only in criminal prosecutions, which ordinarily afford the greatest protection to defendants,[3] while barring such use in civil suits to vindicate the same public interest. Absent such recognizable objective, and in recognition of the anomalous results detailed above, we hold that *Evid.R.* 63(33) should not have been given so restrictive an interpretation on the facts and pleadings of this case. It should be read as if it stated, "... in a criminal *or related* proceeding...."

---

[2]The better view was that an action in trespass could be maintained against the master whose servant committed a tort involving direct application of some force. *See* Scott and Simpson, *Civil Procedure,* Chap. 5, § 2, at 75 (1950).

[3]We recognize respondent's argument that several other evidence rules expressly limit their application to civil or criminal applications. *See Evid.R.* 3; *Evid.R.* 8(3); *Evid.R.* 23; *Evid.R.* 63(5); *Evid.R.* 63(20); *Evid.R.* 63(32). Invariably, however, these are applied so as to make more expansive the admissibility of evidence in civil matters than in criminal matters. For example, although the dying declaration exception of *Evid.R.* 63(5) is limited to criminal cases, this is only because it is a highly narrowed application of the reliability principle adopted in the much more liberal *Evid.R.* 63(32) which, in civil proceedings, makes admissible trustworthy statements of persons unavailable by reason of death.

We remand for the trial court to consider admissibility of the statements in question in accordance with the remaining tests in *Evid.R.* 63(33). In so doing, however, we commend to the attention of the trial judge and counsel recent evidence committee activity which will, in all likelihood, lead to adoption of newly codified rules of evidence in the near future. It may reasonably be expected that the anomalous language of present *Evid.R.* 63(33) will be there addressed. In this regard, it will be prudent to monitor traditional bench and bar notice publications for information as to the status and content of proposed evidence rule revisions.

Reversed and remanded.