125 N.J. Super. 14 (1973)
308 A.2d 353
SCHWERMAN TRUCKING COMPANY, A CORPORATION, PLAINTIFF-APPELLANT,
v.
THE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY AND THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1973.
Decided July 11, 1973.
*16 Before Judges FRITZ, LYNCH, and MARTINO.
Mr. Joseph S. Seidel argued the cause for appellant (Messrs. Paul Appel and Joseph S. Seidel, on the brief).
Mr. Lawrence E. Stanley, Deputy Attorney General, argued the cause for respondents (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
Mr. Thomas F.X. Foley argued the cause for intervenor New Jersey Motor Truck Association.
The opinion of the court was delivered by FRITZ, J.A.D.
We will not tarry over the questionable procedure employed in achieving this review. Respondents complain mildly about the procedure and in particular the untimeliness of the appeal. Regardless of whether the procedure employed is vulnerable, we would consider it unfortunate if all who wanted to mount a constitutional attack on a statute of such broad reach as that with which we are here concerned went about it this way. But the question is before us, and all concerned, including the court, recognize the importance of and necessity for an appellate adjudication. We will decide the merits.
Appellant challenges section 2.1 of chapter 14 of the New Jersey Air Pollution Code, promulgated by the Department of Environmental Protection (Department) pursuant to the *17 authority of N.J.S.A. 26:2C-8 and more particularly N.J.S.A. 26:2C-8.4, implemented by N.J.S.A. 13:1D-7 and N.J.S.A. 13:1D-9(n), and by N.J.S.A. 39:3-70.2. That section reads as follows:

PUBLIC HIGHWAY STANDARD
No person shall operate any diesel-powered motor vehicle or permit any diesel-powered motor vehicle which he owns to be operated upon the public highways of the State if the vehicle, when in motion, emits visible smoke in the exhaust emissions within the proximity of the exhaust outlet, for a period of more than five seconds. [N.J.A.C. 7:27-14.2; emphasis added]
Appellant argues that (a) this regulation contravenes N.J.S.A. 26:2C-8.4 in that a "no visible smoke" standard is unattainable without modification to the equipment; (b) the "no visible smoke" standard is unreasonable and confiscatory and therefore arbitrary, capricious, and unconstitutional, in that it bears no real and substantial relation to the desired end, there is no reasonable way to avoid its violation, and it is inconsistent with other standards, and (c) the standard imposes an unreasonable burden on interstate commerce. The intervening New Jersey Motor Truck Association forwards essentially the same arguments, with perhaps more emphasis on an alleged conflict with a national standard and the suggestion of federal preemption.
At the outset, we are completely satisfied that the Department has been properly and competently empowered by the statutes cited above to regulate smoke emissions from motor vehicles and to enforce sanctions for violations of those regulations. We are equally satisfied that if such regulations are: properly promulgated, reasonable in the sense of being nonarbitrary and designed to accomplish a permissible end, and nondiscriminatory against interstate commerce as well as unlikely to disrupt required uniformity, then there is no constitutional problem arising from the Commerce Clause. Huron Portland Cement Co. v. Detroit, 362 U.S. 440, 448, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960); *18 cf. In re Complaint of Brotherhood of R.R. Trainmen, 49 N.J. 174, 183 (1967). Finally, we are content that not only has there been no federal preemption here, but the federal government has specifically authorized and encouraged the adoption of state and local laws designed to control pollution. 42 U.S.C.A. 1857a(a). As is pointed out in In re Complaint of Brotherhood of R.R. Trainmen, supra:
In Florida Lime & Avocado Growers v. Paul, supra [373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)], the Supreme Court pointed out that federal regulation of a field in commerce should not be deemed preemptive of state power in the absence of persuasive reason  "either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained. [Citations omitted.]" 373 U.S., at p. 142, 83 S.Ct. 1210 * * *. * * * Indeed, it may be said that state regulatory provisions having local safety as their objective are the least likely to be held preempted. [49 N.J. at 182-183]
We conclude that there is no legal impediment to control by the Department of motor vehicle smoke emission. We turn to the particular section here challenged. Initially we note that a hearing was held in advance of the promulgation, on proper notice. Copies of the proposed regulation were distributed in advance. The regulations as eventually promulgated differed in some respects from those proposed in advance.
A review of fundamental propositions will be helpful. An opponent who assails an administrative regulation must overcome the presumption of reasonableness which attaches to such enactments. Consolidation Coal Co. v. Kandle, 105 N.J. Super. 104, 114-115 (App. Div. 1969), aff'd o.b. 54 N.J. 11 (1969). This effort cannot depend for success solely on the absence of administrative findings, Id. at 118, although arbitrary action may be demonstrated by absence of support in the record for findings made. See Campbell Foundry Co. v. Sullivan, 119 N.J. Super. 51, 54 (App. Div. 1972). In this respect, however, consistent with the presumption of validity, facts sufficient to justify the *19 regulation will be presumed. Consolidation Coal Co. v. Kandle, supra. If a reasonable difference of opinion from the facts, real or presumed, exists, the administrative decision will not be disturbed, although the wisdom of the action is doubted by the court. Flanagan v. Civil Service Department, 29 N.J. 1 (1959). In a word, we look for support in the credible evidence in the whole record, and by the employment of reasonable presumptions (to avoid specious, frivolous, or parochial attack), allow the administrative agency the benefit of the doubt in this search.
The generosity of this approach, in the interest of administrative accomplishment and an acknowledgment of expertise in the agency, will not suffice, however, to supply missing record support in a situation where the challenge is substantial and the regulation far-reaching, as here.
Without regard for such problems here presented as an apparent inconsistency between the inspection standard (N.J.A.C. 7:27-14.3  20% opacity) and the public highway standard here under attack (N.J.A.C. 7:27-14.2  visible smoke), or the subjectivity of the visible smoke standard, we are troubled by the suggestion of appellant  supported by evidence here belatedly supplied by affidavit; appellant did not appear at the public hearing[1]  that *20 the standard is unattainable. If this allegation is so, the regulation most probably must fall. The unreasonableness of a regulation of this nature which would effectively result in the suspension of legal operation by all naturally-aspirated diesel engines, and therefore by a large segment of the interstate commerce in trucking, seems apparent, absent a most compelling and desperate motive.
But we need not decide that, for appellant is willing to rely on a more moderate claim in its attack. It insists that to attain operation without visible smoke is impossible without modification of the engines, at least, and it points out correctly that the enabling legislation limits the delegated authority to regulation which will not require modifications, N.J.S.A. 26:2C-8.4. It is clear that where a rule of an administrative agency contravenes the statute empowering the agency to make such rule, the rule lacks legal efficacy. Kamienski v. Bd. of Mortuary Science, 80 N.J. Super. 366 (App. Div. 1963).
Factual support for these allegations is derived from the affidavits referred to above. From these it appears that diesel smoke becomes visible at about 5% opacity. (Contrast the inspection standard of 20% opacity.) We are advised that diesel engines of the natural aspiration type cannot possibly be maintained or tuned to emit smoke of less than 9% opacity without installation of turbo generators.
We might well be less inclined to credit these self-serving affidavits if we were able to find contrary allegations in the ante litem motam record. But the hearing record provides no technical support for the proposition that the visible emission highway standard is reasonably attainable. On the contrary, representatives of the trucking industry presented a great deal of testimony demonstrating their difficulty in understanding the subjective visible emission standard, and therefore, their concern with respect to its attainability. Indeed, the study prepared by Richard G. Kolb and Irmin O. Kamm at Stevens Institute for the then Department of *21 Health, entitled "Diesel Exhaust Smoke Emission Study," while speaking of the determinative role played by design, maintenance, adjustment and fuel chemistry in the diesel smoke situation, spoke only in terms of smoke control. Nowhere is the idea of elimination or a no-visible-smoke standard sponsored. The authors there and one of the authors in a later affidavit suggest to the contrary. In fact, a "15-percent tolerance" for visual assessment is recommended in the report. (The ultimate recommendation of this study was an initiating 30% opacity standard with a 10% tolerance, to be reduced to 20% with a 10% tolerance in two years.)
Here, as is the case in many quasi-legislative rule promulgations by an administrative agency, matters of expertise, indigenous and acquired, far beyond the relatively narrow limits of the public hearing and the Stevens report, unquestionably and properly contributed to the rule-making decision. It is this know-how which the presumption of validity honors. Needless to say, as a practical matter the nature of this knowledge, its broad perimeters, its sometimes intangible quality, do not permit its detailed and precise memorialization in the record or the appendices of appellate briefs supporting the same. But it is not without significance here that the only factual expression forwarded on behalf of the regulation, in the face of appellant's attack grounded in unattainability, is the statement of "P.H. Schweitzer, a recognized authority on diesel smoke" in testimony said to have been given before the United States Senate Committee on Public Works on June 24, 1964, and made a part of the record before the New Jersey Motor Vehicle Air Pollution Control Study Commission in April 1965, as follows:
There is an almost unanimous agreement among the experts that a well designed diesel engine, in good repair, using the proper fuel, will not emit visible smoke. It is similarly accepted that when over-fueled (overloaded) any diesel engine will smoke.
*22 We conclude that the record as presently constituted does not support a necessary finding that the standard set by N.J.A.C. 7:27-14.2 is attainable without modification of the vehicle, and that that section is therefore void and unenforceable.
Conscious of the overwhelming social desirability of pollution control, and aware that at the hearing even the trucking industry applauded and encouraged proper efforts at pollution control, we indulge ourselves in speculation relating to the manner in which the record ended up deficient in the respect we have set forth. We do this, not to justify the occurrence, but to determine where the matter should go from here. First, we suspect that that which was called a "free acceleration test," proposed in the tentative regulations but excluded from the final promulgation, was the subject of such controversy that neither the industry nor the Department paid sufficient attention to the then lesser problem of the visible smoke standard. Second, we are convinced that in view of the fact the Department had, in pre-hearing literature disseminated with the proposed regulations (we are told), suggested a definition of visible emission as one of 20% opacity 12 inches from the exhaust outlet, the industry thought it might receive the same tolerable consideration as was involved in the inspection standard, and it simply adopted a wait-and-see attitude. When enforcement began on a literal visibility basis, unrelated to an objective opacity standard measurable, say, on the Ringelmann chart, the industry belatedly recognized the problem and sought relief.
We believe the ends of justice will be served by affording an opportunity to the Department to reassess the situation and repromulgate a public highway standard. Accordingly, our determination here is without prejudice to the right of the Department to promulgate a further regulation containing a standard susceptible of record support as to reasonableness, including attainability. Nor should our decision be deemed res adjudicata as to a visible smoke standard *23 if such can be supported by competent evidence on a record to be made. We here say only that the record brought up on this appeal does not support the attainability of that standard within the limitations of the enabling statute. We declare the right of the Department to regulate to be established competently and effectively by the New Jersey statutes, and we declare that there has been no federal preemption of the field.
The section of the New Jersey Air Pollution Code in question, N.J.A.C. 7:27-14.2, is stricken and declared void, consistent with the foregoing.
No costs.
NOTES
[1] We do not condone this procedure. Much difficulty and expense could have been saved by a timely presentation, in which case an earlier determination could have been had for the benefit of all concerned. In view of our power to remand for a supplemented record, R. 2:5-5(b) (contrast R.R. 4:88-9), we receive the affidavits said to have been appended to the notice of appeal. (Appellant did not print its notice of appeal nor these affidavits in its appendix, but furnished separate copies to the clerk; see R. 2:6-1.) We do this mindful of fair play considerations which suggest that the State should have an opportunity beyond that available in answering briefs to contest the allegations of these affidavits, and completely aware of the impossibility of cross-examining an affidavit. See Tancredi v. Tancredi, 101 N.J. Super. 259 (App. Div. 1968). We repeat, as we have said at the outset of the opinion, our acceptance of this controversy is for the purpose of deciding a question which cries for decision. It must not be mistaken for an easy indulgence of regrettable, if not improper, procedure.