605 A.2d 733
IN RE ADOPTION OF N.J.A.C. 7:1E.

CHEMICAL INDUSTRY COUNCIL OF NEW JERSEY, APPELLANT,
v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PRO-
TECTION & ENERGY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 10, 1992—Decided April 8, 1992.

Before Judges SHEBELL and D'ANNUNZIO.

*Michael J. Herbert* argued the cause for appellant Chemical Industry Council of New Jersey (*Picco, Mack, Herbert, Kennedy, Jaffe and Yoskin,* attorneys; *Michael J. Herbert,* of counsel; *Susan C. Gieser,* on the brief).

*Gerard D. Burke,* Deputy Attorney General, argued the cause for respondent Department of Environmental Protection and Energy (*Robert J. Del Tufo,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *David W. Bosted,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

This appeal from the adoption of regulations first proposed on May 6, 1991, by the New Jersey Department of Environmental Protection and Energy (DEPE) to implement the July, 1990 amendments to the New Jersey Spill Compensation and Control Act (Spill Act), *N.J.S.A.* 58:10–23.11d1–23.24, comes to us on an expedited schedule. The DEPE repealed the previous provi-

sions of *N.J.A.C.* 7:1E and replaced them with a comprehensive revision. The new regulations when first proposed were published in the New Jersey Register at 23 *N.J.R.* 1335(a). The public comment period closed on June 12, 1991. Appellant, Chemical Industry Council of New Jersey (CIC), along with other interested parties, submitted written comments on or prior to that date. The final regulations were published on September 3, 1991 at 23 *N.J.R.* 2656(a) and became operative on September 11, 1991.

On October 18, 1991, the CIC filed a notice of appeal with this court. CIC moved pursuant to *R.* 2:9-7 before the Commissioner of the DEPE for a stay of the implementation of *N.J.A.C.* 7:1E pending our review. The Commissioner denied this request. We also denied CIC's request for a stay; however, we ordered that the appeal be expedited.

CIC is a New Jersey based trade association representing approximately 105 chemical and allied product manufacturers in this State. The DEPE is a public agency empowered by our Legislature pursuant to the Spill Act to promulgate rules and regulations to implement the Spill Act. *N.J.S.A.* 58:10-23.11f6.

In 1990, the Legislature, in response to an ever-increasing number of discharges of hazardous substances in this State and on its waterways, enacted a package of six bills with the purpose preventing and deterring spills and discharges of petroleum products, debris, and other hazardous substances. Five of these bills amended the Spill Act. Signed into law on July 21, 1990, these bills required the DEPE to undertake added responsibilities. The Commissioner of the DEPE accurately summarized the statutes and requirements under each as follows:

1. 1990 Assembly No. 3262 (P.L.1990, Chapter 78). This law established an expanded Discharge Prevention, Containment and Countermeasure (DPCC) Program. DEPE must adopt rules specifying the contents of DPCC and discharge cleanup and removal (DCR) plans, provide criteria for identifying environmentally sensitive areas, review DPCC and DCR plans when submitted, and conduct onsite inspections to verify compliance with adopted standards. DEPE is also required to receive and, where appropriate, respond to notifica-

tions of discharges and leak detection equipment malfunctions. The statute also increases the tax on the transfer of hazardous substances from major facilities by $0.0025 per barrel.

2. 1990 Assembly No. 3265 (P.L.1990, Chapter 79). This law amended the Corporation Business Tax of 1945 and the New Jersey Gross Income Tax Act, eliminating as a deductible business expense any penalty or fine collected for violation of state or federal environmental law. Also eliminated as deductible expenses are treble damages to the State for cleanup and removal costs incurred as the result of the failure of a discharger to clean up an unauthorized discharge.

3. 1990 Assembly No. 3268 (P.L.1990, Chapter 80). This law requires the illumination of marine transfers of hazardous substances on state waterways during non-daylight hours. DEPE must specify the intensity and area of illumination.

4. 1990 Senate No. 2517 (P.L.1990, Chapter 75). This statute gives DEPE added authority to set civil administrative penalties of up to $10 million for discharges of 100,000 gallons or more of hazardous substances.

5. 1990 Senate No. 2520 (P.L.1990, Chapter 76). This bill requires that protective measures, such as the placement of containment booms, be taken during the transfer of hazardous liquids at marine facilities. DEPE must prescribe the type of containment devices to be employed, how they must be deployed and identify the types of hazardous substances which require booming.

6. 1990 Senate No. 2521 (P.L.1990, Chapter 77). The Hazardous Liquids Transportation Act requires registration for transmission pipelines carrying hazardous substances. DEPE must conduct a comprehensive pipeline safety study, including the feasibility of adopting appropriate standards for construction and materials, leak detection systems, and secondary containment for underwater pipelines.

One of the central provisions of the Spill Act, which has long been in effect, requires that any person who may be subject to liability for a "discharge" of a hazardous substance shall immediately report the occurrence to the DEPE. *N.J.S.A.* 58:10–23.11e. That provision presently reads as follows:

Any person who may be subject to liability for a discharge which occurred prior to or after the effective date of the act of which this act is amendatory shall immediately notify the department. Failure to so notify shall make persons liable to the penalty provisions of section 22 of this act. [*N.J.S.A.* 58:10–23.11e (footnote omitted)].

The DEPE, in support of its position in adopting *N.J.A.C.* 7:1E–1.6 and thereby requiring that *all* discharges into the water or onto the lands of the State be immediately reported, urges that these rules serve a critically important role in

protecting the environment from pollution through discharges of hazardous substances. The requirement that all discharges of hazardous substances into the waters or lands of the State be reported is intended, according to the agency, to make it aware of such discharges so DEPE can ensure prompt cleanups and liability assessment.

The statute designates two types of discharges:

"Discharge" means [1] any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State, or [2] into waters outside the jurisdiction of the State, when damage may result to the lands, waters or natural resources within the jurisdiction of the State. [*N.J.S.A.* 58:10–23.11bh].

The statutory definition of "discharge" is basically unchanged since its initial enactment in 1977, but for the deletion of the extraneous phrase "from which it might flow or drain into said waters." It is clear that since the April 1991 deletion of a comma after "outside the jurisdiction of the State" in *N.J.S.A.* 58:10–23.11bh, that the phrase "when damage may result" only applies to discharges "into waters outside the jurisdiction of the State." The Spill Act therefore defines "discharges" occurring within the State to include spills of hazardous substances without regard to whether damage may result.

The disputed regulations which the DEPE adopted incorporate the statutory definition of "discharge" almost verbatim. The differences in the definitions are (1) that the regulation, *N.J.A.C.* 7:1E–1.6, reiterates the 1977 statutory provision that a discharge pursuant to a state or federal permit need not be reported, *N.J.S.A.* 58:10–23.11c, and (2) states that a "leak," as distinguished from a discharge, also need not be reported. "Leak" is defined as follows:

"Leak" or "leakage" means any escape of a hazardous substance from the ordinary containers employed in the normal course of storage, transfer, processing or use into a secondary containment or diversion system or onto a surface from which it is cleaned up and removed prior to its escape into the waters or onto the lands of the State. [*N.J.A.C.* 7:1E–1.6].

Thus, the regulations on their face are more restrictive, not broader than, the enabling statute.

The enabling legislation which requires that the DEPE promulgate regulations under the Spill Act as amended states:

> Within one year of the effective date of P.L.1990, c. 78 (C. 58:10–23–11d1 et seq.), the department shall adopt, pursuant to the "Administrative Procedure Act," P.L.1968, c. 410 (C. 52:14B–1 et seq.), rules and regulations necessary to implement the provisions of P.L.1990, c. 78 (C. 58:10–23.11d1 et seq.). Pending adoption of rules and regulations, the department may require a major facility or transmission pipeline to take such action to upgrade the discharge and prevention capabilities at the facility or pipeline as the department may deem appropriate. [*N.J.S.A.* 58:10–23.11d14].

*See N.J.S.A.* 58:10–23.11f6. In *GATX Terminal Corp. v. Department of Envtl. Protection,* 86 *N.J.* 46, 429 *A.*2d 355 (1981), our Supreme Court upheld regulations promulgated by the DEPE under the Spill Act after they were challenged as being beyond the scope of the statute. The Court stated in 1981:

> We find in *N.J.S.A.* 58:10–23.11d, and particularly in subparagraph (f) thereof which provides that the DEP "shall promulgate rules and regulations ... *establishing standards for the availability of preventative,* cleanup and removal procedures, personnel and *equipment"* (emphasis added), a clear statutory basis for DEP authority to deal with the prevention of discharges, as well as with containment, cleanup and removal after a spill has occurred. [*Id.* at 52, 429 *A.*2d 355].

Generally, an administrative regulation is presumed to be valid and reasonable. *City of Newark v. Natural Resource Council in Dep't of Envtl. Protection,* 82 *N.J.* 530, 539, 414 *A.*2d 1304, *cert. denied,* 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.*2d 245 (1980); *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 561, 384 *A.*2d 795 (1978). Review of agency action requires the following inquiry:

> [W]hether (1) the agency action violates the enabling act's express or implied legislative policies; (2) there is substantial basis in the record to support the findings upon which the agency based the application of legislative policies; and (3) in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not have been reasonably made upon a showing of the relevant factors. *In the Matter of Water Supply Critical Area,* 233 *N.J. Super.* 280, 284, 558 *A.*2d 1321 (App. Div.1989), citing *Public Service Elec. v. DEP,* 101 *N.J.* 95, 103, 501 *A.*2d 125 (1985). [*In re Adoption of N.J.A.C. 7:26B,* 250 *N.J. Super.* 189, 207 [593 *A.*2d 1193] (App. Div.), *cert. granted,* 126 *N.J.* 387 [599 *A.*2d 163] (1991)].

It is also well-settled that a determination that an administrative regulation is *ultra vires* is disfavored. *New Jersey Guild*

*of Hearing Aid Dispensers v. Long,* 75 *N.J.* at 561, 384 *A.*2d 795; *In re New Jersey Bd. of Pub. Utils.,* 200 *N.J.Super.* 544, 557, 491 *A.*2d 1295 (App.Div.1985). In reviewing a regulation, this "court may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives." *Long,* 75 *N.J.* at 562, 384 *A.*2d 795.

The support for the conclusion that the regulations under *N.J.A.C.* 7:1E are within the contemplation of the enabling act is overwhelming. *N.J.S.A.* 58:10–23.11d14 specifically directs the DEPE to adopt regulations pursuant to the "Spill Act." It is clear that the regulations under *N.J.A.C.* 7:1E do not exceed the enabling legislation. Further, although not expressly stated by the Legislature, it can be inferred that the Legislature wanted the regulations to be broad enough to protect the "general health, safety, and welfare of the people of this State...." *GATX,* 86 *N.J.* at 48–52, 429 *A.*2d 355.

Appellant contends that the provisions of *N.J.A.C.* 7:1E coupled with the regulatory definitions of the terms "discharge" and "hazardous substance" impermissibly expand the scope of the Spill Act and are arbitrary as well as unreasonable. Appellant also maintains that the Legislature could not have intended that all discharges of hazardous substances be reported. It argues that reporting a discharge, even if it occurs within this State, should only be necessary "when damage may result" under *N.J.S.A.* 58:10–23.11bh, as failure to so limit the notification requirement would result in nonsensical and unjust results. Appellant cites several hypothetical situations involving ordinary citizens and everyday mishaps to substantiate its position.

The DEPE argues that the Spill Act imposes strict liability for discharges occurring within the State without proof of damage and that no other limitation is acceptable. It notes that the Commissioner concluded that broad language was necessary "because the variety of types of discharges is great," but that a commonsense approach to enforcement would prevail.

■ A strong presumption exists in favor of finding a statute valid "and the burden of proving its unconstitutionality is 'an extremely formidable one.'" *State v. Owens–Corning Fiberglas Corp.*, 100 *N.J.Super.* 366, 382, 242 *A.*2d 21 (App.Div.1968), *aff'd*, 53 *N.J.* 248, 250 *A.*2d 11 (1969) (quoting *Levitt & Sons, Inc. v. Division Against Discrimination*, 31 *N.J.* 514, 531, 158 *A.*2d 177 (1960)). The same standard is applicable to regulations. *See Schwerman Trucking Co. v. Department of Envtl. Protection*, 125 *N.J.Super.* 14, 18, 308 *A.*2d 353 (App.Div.1973). Further, where the clear purpose of the statute is the protection of the public health and welfare, this court should liberally construe the statute to accomplish its obvious beneficent objective. *Owens–Corning Fiberglas Corp.*, 100 *N.J.Super.* at 382, 242 *A.*2d 21. Defendants maintain, however, that the broad powers to implement the Spill Compensation and Control Act, which powers shall be liberally construed, *GATX*, 86 *N.J.* at 52, 429 *A.*2d 355, are not without limitation. *See In re Adoption of N.J.A.C. 7:26B*, 250 *N.J.Super.* at 244–45, 593 *A.*2d 1193 ("While ECRA is a remedial statute which is arguably liberally or generally construed … the courts … have carefully construed statutory language which imposes liability on a landowner….").

The definition of "discharge" in *N.J.A.C.* 7:1E–1.6 is almost identical to the definition of "discharge" in *N.J.S.A.* 58:10–23.11b. Both are set forth as follows:

"Discharge" means any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State, or into waters outside the jurisdiction of the State when damage may result to the lands, waters or natural resources within the jurisdiction of the State. [*N.J.S.A.* 58:10–23.11bh].

"Discharge" means any intentional or unintentional action or omission, unless pursuant to and in compliance with a valid and effective Federal or State permit, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of a hazardous substance into the waters or onto the lands of the State or into waters outside the jurisdiction of the State when damage may result to the lands, waters or natural resources within the jurisdiction of the State. This term does not include "leak." [*N.J.A.C.* 7:1E–1.6].

The DEPE's interpretation that *any* "discharge" needs to be reported if it is onto lands of this State or into the waters of this State and that only those discharges that occur outside the State which may damage lands or waters in this State need to be reported is reasonably calculated to guarantee the Department will be made aware of discharges and able to identify those persons who may be liable under the Spill Act. *See* *N.J.S.A.* 58:10–23.11a (setting forth the Legislature's "findings and declarations" that the "discharge of petroleum products and other hazardous substances within or outside the jurisdiction of this State constitutes a threat to the economy and environment of this State.") We find no basis for deviating from what we consider to be the Legislature's mandate. Thus, the regulation definition of "discharge" cannot be considered to be beyond the scope of the enabling legislation. We are not here called upon to determine the extent to which, if at all, the ultimate liability of a person causing a non-damaging discharge is enlarged under the Spill Act.

■ Appellant also maintains that the terms "discharge" and "hazardous substances" are not adequately defined, citing various comments and responses made at the public hearings on the regulations in support of its contention. Again, these comments make it clear that the position of the DEPE is that *any* "discharge" of a "hazardous substance" must be reported.

"Hazardous substances" are defined in *N.J.S.A.* 58:10–23.11bk as follows:

k. "Hazardous substances" means the "environmental hazardous substances" on the environmental hazardous substance list adopted by the department pursuant to section 4 of P.L.1983, c. 315 (C. 34:5A–4); such elements and compounds, including petroleum products, *which are defined as such by the department, after public hearing,* and which shall be consistent to the maximum extent possible with, and which shall include, the list of hazardous substances adopted by the federal Environmental Protection Agency pursuant to section 311 of the federal Water Pollution Control Act Amendments of 1972, Pub. L. 92–500, as amended by the Clean Water Act of 1977, Pub. L. 95–217 (33 U.S.C. § 1251 et seq.); the list of toxic pollutants designated by Congress or the EPA pursuant to section 307 of that act; and the list of hazardous substances adopted by the federal Environmental Protection Agency pursuant to section

101 of the "Comprehensive Environmental Response, Compensation and Liability Act of 1980," Pub. L. 96–510 (42 U.S.C. § 9601 et seq.); provided, however, that sewage and sewage sludge shall not be considered as hazardous substances for the purposes of this act;

Pursuant to this statute, the regulations contain a detailed and extensive list of hazardous substances as set forth in Appendix A under *N.J.A.C.* 7:1E. Thus, "discharge" and "hazardous substances" are described with adequate specificity in the regulations.

■ Defendant's concern that the regulations do not specify a "quantity" of the discharge of a hazardous substance was clearly answered during the commentaries to the regulations:

"The Department does not specify a percent concentration." "The definition of 'discharge' is not linked to the quantity of the hazardous substance released." "Any quantity of a hazardous substance released to the lands or waters of the State is a discharge...." "The Department wants to be aware of all discharges that are occurring within New Jersey." "A de minimus standard is not appropriate for these rules." 23 *N.J.R.* 2671, 2706–2707.

DEPE's interpretation of "discharge" does not impermissibly expand the scope of individuals that the Legislature intended to regulate under the Spill Act. Rather, the regulations appear to further the Legislature's intent under the Spill Act.

Appellant also maintains that the definitions of the terms "discharge" and "hazardous substance" are void for vagueness. Our Supreme Court has stated:

Clear and comprehensible legislation is a fundamental prerequisite of due process of law, especially where criminal responsibility is involved. Vague laws are unconstitutional even if they fail to touch constitutionally protected conduct, because unclear or incomprehensible legislation places both citizens and law enforcement officials in an untenable position. Vague laws deprive citizens of adequate notice of proscribed conduct, *Lanzetta v. New Jersey*, 306 *U.S.* 451, 453, 59 *S. Ct.* 618, 619, 83 *L. Ed.* 888, 890 (1939), and fail to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement....

A law is void as a matter of due process if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 *U.S.* 385, 391, 46 *S. Ct.* 126, 127, 70 *L. Ed.* 322, 328 (1926). [*Town Tobacconist v. Kimmelman*, 94 *N.J.* 85, 118, 462 *A.2d* 573 (1983)].

Regulations must also "be sufficiently definite to inform those subject to them as to what is required." *New Jersey Ass'n of*

*Health Care Facilities v. Finley,* 83 *N.J.* 67, 82, 415 *A.*2d 1147, *appeal dismissed, cert. denied,* 449 *U.S.* 944, 101 *S.Ct.* 342, 66 *L.Ed.*2d 208 (1980).

*N.J.S.A.* 2C:17–2, which makes a violation of the Spill Act a criminal offense in some circumstances, provides:

> (2) A person who, purposely or knowingly, unlawfully causes a hazardous discharge required to be reported pursuant to the "Spill Compensation and Control Act," P.L.1976, c. 141 (C. 58:10–23.11 et seq.) or any rules and regulations adopted pursuant thereto, or who, purposely or knowingly, unlawfully causes a release of abandonment of hazardous waste as defined in section 1 of P.L.1976, c. 99 (C. 13:1E–38) or a toxic pollutant as defined in section 3 of P.L.1977, c. 74 (C. 58:10A–3) commits a crime of the second degree. Any person who recklessly violates the provisions of this paragraph is guilty of a crime of the third degree. The provisions of N.J.S. 2C:1–6 to the contrary notwithstanding, a prosecution for a violation of the provisions of this paragraph shall be commenced within five years of the date of the discovery of the violation.

We have reviewed the regulations under *N.J.A.C.* 7:1E with the same scrutiny as a penal statute. *See* M. Wolf & L. Goldshore, *Pollution's Price Not Just Cost of Doing Business,* 127 *N.J.L.J.* 575 (Feb. 28, 1991) (cited by DEPE for the proposition that "[c]riminal penalties for environmental offenses are becoming more routine.") We find the regulations to be "sufficiently definite to inform those subject to them as to what is required." *Finley,* 83 *N.J.* at 82, 415 *A.*2d 1147.

Appellant maintains that the DEPE's statement that "[t]he Department's enforcement of the law ... will be based on a sensible, rather than literal, interpretation of the statutory text, with the purpose and reason for the legislation controlling," evidences that the regulations are vague. *See Boller Beverages, Inc. v. Davis,* 38 *N.J.* 138, 152–53, 183 *A.*2d 64 (1962). Appellant concludes that "[b]y not specifying a quantity or concentration, the regulated community has no idea when the NJDEP's 'common sense' approach will result in a determination that a reportable discharge occurred."

The appellant also relies on *In re Adoption of N.J.A.C. 7:26B,* 250 *N.J.Super.* at 229, 593 *A.*2d 1193, where this court invalidated regulations due to their lack of specificity and

stated: "[W]e require the DEP to have a more articulate standard for its exemption to ECRA than its own 'satisfaction,' the only standard in current *N.J.A.C.* 7:26B–1.9." *Id.* Thus, appellant maintains that the regulations in this case must also be found unconstitutional since the regulations "provide[ ] no objective standard." *See id.* at 225, 593 *A.2d* 1193.

The premise is established that under the regulations adopted by DEPE any discharge of a hazardous substance, regardless of the quantity of the hazardous substance, must be immediately reported to the DEPE. So interpreted, the duty to report is not vague. Indeed, nothing could be clearer than the mandate established here. We are therefore constrained to find the regulations constitutional under the test set forth in *State v. Cameron,* 100 *N.J.* 586, 593–94, 498 *A.2d* 1217 (1985), for attacks based on facial vagueness. There the Court stated:

> Judicial analysis of statutory vagueness also depends upon whether a law is challenged as applied, or facially. A statute that is challenged facially may be voided if it is "impermissibly vague in all its application," that is, there is no conduct that it proscribes with sufficient certainty. *Hoffman Estates [v. Flipside, Hoffman Estates, Inc.] supra,* 455 *U.S.* [489] at 495, 102 *S.Ct.* [1186] at 1192, 71 *L.Ed.*2d [362] at 369 [1982]; *[State v.] Lee, supra,* 96 *N.J.* [156] at 167 [475 *A.2d* 31(1984)]; *Town Tobacconist, supra,* 94 *N.J.* at 119 [462 *A.2d* 573]. A statute so lacking in definitional certainty can be characterized as "perfectly vague." ...
>
> A statute can be challenged "as applied" if the law does not with sufficient clarity prohibit the conduct against which it sought to be enforced. ... Conversely, if a statute is not vague as applied to a particular party, it may be enforced even though it might be too vague as applied to others. *See, e.g., Lee, supra,* 96 *N.J.* at 167 [475 *A.2d* 31] (criminal statute found facially valid because not "impermissibly vague in all its applications," also found valid as applied, notwithstanding the possibility of other circumstances in which it would be too vague to apply); *[State v.] Lashinsky, supra,* 81 *N.J.* [1] at 18 [404 *A.2d* 1121 (1979)] (criminal statute prohibiting "obstruction" of another person acknowledged to be potentially vague but, nevertheless, found to be sufficiently clear as applied to defendant's conduct in the particular case).
>
> To summarize, a law that is challenged for facial vagueness is one that is assertedly impermissibly vague in all its applications. A statute that is challenged as applied, however, need not be proven vague in all conceivable contexts, but must be shown to be unclear in the context of the particular case. In either a facial or as-applied vagueness attack, the level of judicial scrutiny and degree of required clarity will depend on the purpose of the statute, the context in which the law is challenged, the conduct that is subject to its

strictures, the nature of the punishment that is authorized, and, finally, the potential impact of the statute upon activities and interests that are constitutionally protected. [*Id.*].

The CIC has facially challenged the regulations. It has not challenged them "as applied." There are innumerable applications of the regulations that are clear and not in any sense vague or subject to doubt. *Id.* 100 *N.J.* at 593, 498 *A.*2d 1217. Thus, even if the regulations may be subject to question in some of their applications, they are not "facially invalid." *Id.* The statute and regulations "as applied" may be attacked as unconstitutionally vague or violative of a protected interest in the future if the circumstances of a particular case warrant it.

Affirmed.

D'ANNUNZIO, J.A.D., concurring.

I concur in the rejection of appellant's facial attack on these regulations. I write separately because the Department has taken the position that a spill of a minimal amount of a hazardous substance triggers the obligation to "immediately notify the department," *N.J.S.A.* 58:10–23.11e, regardless of the spill's potential to cause injury or damage.

The Department, for example, takes the position that a homeowner who spills a small amount of gasoline on a lawn while filling a power mower must immediately notify the Department. Under the regulations, immediate means within 15 minutes. *N.J.A.C.* 7:1E–5.3(b). Non-compliance with the regulation subjects the homeowner to the Spill Act's penalty provisions. *N.J.S.A.* 58:10–23.11u and 23.11u1.

I have substantial reservations regarding applicability of the Spill Act and, therefore, of the Department's regulations, to the example given and to similar *de minimus* events. Consequently, our affirmance of the regulations in the context of a facial attack on them must not be interpreted as a blank check to the Department to exceed the legislature's intent or to immunize the Department from attacks on its regulations in specific applications. *See Roman v. Sharper*, 53 *N.J.* 338, 341, 250

*A*.2d 745 (1969) (we should assume that Legislature intended a reasonable approach, and a statute should be construed to effect a reasonable approach); *Schierstead v. Brigantine,* 29 *N.J.* 220, 230–31, 148 *A*.2d 591 (1959) (statutes are to be read sensibly rather than literally; legislative intent is to be presumed as "consonant to reason and good discretion" and absurd consequences are to be avoided).