278 N.J. Super. 56 (1994)
650 A.2d 379
WASTE MANAGEMENT OF CENTRAL JERSEY, INC., APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ENERGY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1994.
Decided December 14, 1994.
*61 Before Judges STERN, KEEFE and HUMPHREYS.
Sandra T. Ayres argued the cause for appellant (Schwartz, Tobia & Stanziale attorneys; Ms. Ayres on the brief).
Leslie Dannin Rosenthal, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Rosenthal on the brief).
The opinion of the court was delivered by HUMPHREYS, J.S.C. (temporarily assigned).
Waste Management of Central Jersey, Inc., ("Waste Management") challenges certain rules adopted by the State of New Jersey, Department of Environmental Protection and Energy ("DEPE") pursuant to the Solid Waste Collection Regulatory Reform Act ("Regulatory Reform Act"). N.J.S.A. 48:13A-7.1 et seq. Waste Management contends that the rules are vague, ultra vires and contrary to the purposes of the Regulatory Reform Act.
We disagree and hold that the rules with a modification are a valid exercise of the supervisory authority of the DEPE over the solid waste collection industry and are consistent with the terms and purposes of the Regulatory Reform Act.

I
The collection and disposal of solid waste in New Jersey has long been of great concern. The solid waste industry has been plagued for decades with "favoritism, rigged bids, official corruption and the infiltration of organized crime." In re Application of Saddle River, 71 N.J. 14, 22, 362 A.2d 552 (1976).
*62 In 1970, the Legislature sought to regulate the industry by placing it under the supervision of the Board of Public Utilities ("Board"). See the Solid Waste Utility Control Act, N.J.S.A. 48:13A-1 et seq. Under that statute, rates for collection and disposal of solid waste were regulated by the Board. N.J.S.A. 48:13A-4(a); see also N.J.S.A. 48:2-21.
In 1989, the State Commission of Investigation ("SCI") severely criticized public utility rate regulation of the solid waste industry and called for its elimination. The Legislature responded by enacting in 1991 the Regulatory Reform Act. The Legislature determined in the Regulatory Reform Act that "it is in the public interest to establish procedures for the eventual termination of public utility rate regulation of solid waste collectors while at the same time maintaining Board of Public Utilities supervision over the solid waste collection industry." N.J.S.A. 48:13A-7.2. (The authority of the Board is now vested in the DEPE. See Exec. Order No. 38 (1991)).
The Regulatory Reform Act provides for a transition period of four years from "economic regulation to the termination of Board of Public Utilities rate regulation of the solid waste collection industry." N.J.S.A. 48:13A-7.9. However, the Regulatory Reform Act does not place any time limit on state supervision of the industry.
The DEPE prepared rules under the Regulatory Reform Act. Comments on them were received. A public hearing was held. The proposed rules were revised and final rules under the Regulatory Reform Act were adopted. N.J.A.C. 14:3-11.1 et seq.
The DEPE's purpose in adopting the rules was to:
1. Establish rules and procedures for regulatory reform and the eventual termination of traditional public utility rate regulation of the solid waste collection industry; and
2. Establish a responsible State supervisory role to ensure safe, adequate and proper solid waste collection service at competitive rates.
[N.J.A.C. 14:3-11.1]
*63 The rules provide that they "shall be construed in conformity with, and not in derogation of, such statutes [the Regulatory Reform Act and other statutes]." N.J.A.C. 14:3-11.2. Nevertheless, Waste Management contends that certain rules are contrary to and in derogation of the Regulatory Reform Act.
Specifically, Waste Management challenges: (1) the ban and limitations on rate band adjustments to initial tariffs, N.J.A.C. 14:3-11.7(c)(3); 14:3-11.7(c)(4); 14:3-11.8(b)(4); (2) the ban on implementation of filed initial tariff rates without prior approval, N.J.A.C. 14:3-11.7(c)(5); 14:3-11.8(b)(3); (3) the advance notice requirement for disposal charge adjustments and the requirement to attach the customer's tariff schedule to each notice, N.J.A.C. 14:3-11.8(a)(5)(iii) and (iii)(3); (4) the ban on contract services unless and until the filed contract is approved, N.J.A.C. 14:3-11.8(e)(3); (5) the "ambiguous" provisions on contract filings, N.J.A.C. 14:3-11.8(e)(2) and (3); (6) the requirement to file an initial tariff with the filing of a contract, N.J.A.C. 14:3-11.8(e)(3)(v); (7) the requirement for a thirty-day termination option in all contracts for residential services, N.J.A.C. 14:3-11.8(e)(4); and (8) the requirement that all notices to tariff and contract customers include a statement that they may choose another collector at any time, N.J.A.C. 14:3-11.7(c)(6); 14:3-11.8(a)(5)(iii)(4).
An important issue is the limitation in the rules on the use of rate bands. Solid waste collectors may vary their prices within certain prescribed limits known as rate bands. N.J.A.C. 14:3-11.4(a). The Regulatory Reform Act continues rate bands during the four year transition period in accordance with a schedule set forth in the statute. See N.J.S.A. 48:13A-7.9. However, one of the rules provides that new entrants into the collection field may not use the rate bands during the remainder of that transition year. N.J.A.C. 14:3-11.7(c)(3).
Waste Management contends that this rule conflicts with the Regulatory Reform Act since the Act does not refer to any rate band exceptions for new entrants. Waste Management also contends *64 that the rule will discourage new companies from entering the industry and therefore deter the competition that the Regulatory Reform Act was intended to foster.
In addition, new entrants must under the rules obtain DEPE's prior approval for their tariff schedule. N.J.A.C. 14:3-11.7(c)(5) and 14:3-11.8(b)(3). The Regulatory Reform Act does not specifically require prior approval of a tariff. Waste Management argues that these rules are therefore ultra vires. Waste Management also contends that these rules place severe burdens on new entrants and consequently run counter to the Regulatory Reform Act's policy of fostering competition.
Another major issue relates to contracts. A rule requires that all contracts for solid waste collection services are to be filed with the DEPE. N.J.A.C. 14:3-11.8(e)(1). If the contract is for new services or in a new territory or for a price different than the collector's tariff, the contract must be first approved by the DEPE. N.J.A.C. 14:3-11.8(e)(3). Waste Management contends that prior DEPE approval of contracts is not authorized by the Regulatory Reform Act and violates its purpose.

II
A strong presumption of validity attaches to administrative regulations. See A.A. Mastrangelo, Inc. v. Environmental Protection Dep't, 90 N.J. 666, 687, 449 A.2d 516 (1982). An administrative agency's interpretation of the statute it is charged with enforcing is entitled to great weight. In re Application of Saddle River, supra, 71 N.J. at 24, 362 A.2d 552. Deference is also traditionally given to an agency's interpretation of novel legislation, especially when the interpreter is its implementing agency. In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 451, 608 A.2d 288 (1992). An ultra vires finding regarding such regulations is "disfavored." New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561, 384 A.2d 795 (1978). These principles are particularly true of administrative regulation in the sensitive field of solid waste management. See Matter of Scioscia, *65 216 N.J. Super. 644, 652, 524 A.2d 855 (App.Div.), certif. denied, 107 N.J. 652, 527 A.2d 471 (1987).
The absence of express statutory authorization in the enabling legislation will not preclude action by an administrative agency where "by reasonable implication, that action can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation." A.A. Mastrangelo, Inc., supra, 90 N.J. at 684, 449 A.2d 516. Where there is reasonable doubt as to whether such power is vested in the administrative body and where the enabling legislation cannot fairly be said to authorize the agency action in question, then the power is denied. Ibid. However, courts should readily imply to an administrative agency such powers as are necessary to permit the agency to carry out the legislative intent. New Jersey Guild of Hearing Aid Dispensers, supra, 75 N.J. at 562, 384 A.2d 795. This is especially true in matters that affect public health. In re Adoption of N.J.A.C. 7:26B, supra, 128 N.J. at 450, 608 A.2d 288.
Moreover, courts should not "substitute their judgment as to the wisdom of administrative action" so long as it is "statutorily authorized and not otherwise defective because [it is] arbitrary or unreasonable." New Jersey Guild of Hearing Aid Dispensers, supra, 75 N.J. at 562-563, 384 A.2d 795.
Here the administrative agency is expressly authorized by statute to "adopt appropriate rules, regulations or administrative orders for the supervision of the solid waste collection industry." N.J.S.A. 48:13A-4(b). The agency is also authorized by statute to "adopt appropriate rules, regulations or administrative orders providing for the interdistrict, intradistrict, and interstate flow of solid waste." N.J.S.A. 48:13A-4(c).
This expansive and important authority granted to an administrative agency by the Legislature cautions against any narrow judicial construction of the agency's exercise of that authority. A fair construction of the Regulatory Reform Act is that the legislative mandate of the DEPE is to establish rules and *66 procedures for the eventual termination of public utility rate regulation in the solid waste collection industry while at the same time, to maintain supervision over that industry, to protect the interests of consumers, as well as the industry, and to foster competition.
The DEPE contends and for the following reasons we agree that each of the challenged regulations is consistent with and serves those purposes.

III
The DEPE contends that preventing new entrants from using rate bands during the transition year in which they enter is a proper exercise of the DEPE's supervisory authority over the solid waste collection industry. The DEPE argues that if there were no such restraints, new entrants would be able to set an initial rate at a competitive level while the collectors already providing the service would be limited to their tariff and rate band adjustments. Hence, the new collector would have greater competitive pricing ability over those collectors already in the market. The DEPE in its brief presents the following cogent example:
It is not surprising to find Appellant, a subsidiary of one of the largest solid waste companies in the world, seeking to eliminate this provision of the Reform Act Rules. WMCJ has the resources and the manpower to devote to the study of its competitors' rates and charges, to structure its pricing accordingly in keeping with those of its competitors and to enter into new territories or provide new types of service. Of course WMCJ would like, in addition, to have the opportunity to use an additional rate band adjustment to its advantage. But the Reform Act does not countenance unbridled competition from the inception of deregulation, so therefore neither can the Reform Act Rules. While WMCJ can pursue its own best interests, the Department still maintains the authority and obligation to supervise and protect the entire industry for the health and safety of all.
With respect to prior approval of the initial tariff rates of new entrants, the DEPE persuasively argues that its rules are consistent with the authority expressly granted to the agency by the Regulatory Reform Act to require a new entrant to furnish proof that its rates will be "just and reasonable." See N.J.S.A. 48:13A-7.5. Through the exercise of prior approval, the DEPE asserts *67 that it will be able to ensure that new entrants are sound financially and are able to provide proper service at competitive rates. The DEPE argues and we agree that its rules therefore serve and are consistent with the legislative intent to establish "a responsible State supervisory role to ensure safe, adequate and proper solid waste collection service at competitive rates." N.J.S.A. 48:13A-7.2.
A court must defer to the DEPE's reasonable determination of what rules and procedures are best suited to advance the policies of the Regulatory Reform Act. Our function is not to determine the merits of Waste Management's arguments that the rules and procedures regarding new entrants will deter competition. It is enough that the supervising and enforcing administrative agency has reasonably concluded to the contrary and that its conclusion is based on sensible grounds rooted in its experience and expertise in this sensitive field. The agency's rules regarding new entrants clearly do not "flout the statutory language and undermine the intent of the Legislature." In re Adoption of N.J.A.C. 7:26B, supra, 128 N.J. at 450, 608 A.2d 288.
With respect to the rules regarding contracts, the DEPE sets forth the following persuasive justification. The DEPE states that contracts which involve charges different from a collector's published tariff are subject to serious abuse. The DEPE argues that without the DEPE review of contracts, unscrupulous collectors could evade tariffs and shackle customers. The DEPE contends that companies such as Waste Management, "with a large base of operations and greater economic ability to absorb losses, are certainly in a position to use contracts to their advantage during a gradual movement toward deregulation, unless these contracts are reviewed to ensure that they confer no undue advantage." In light of the above justification, we find that the contract rules are a proper exercise of the DEPE's supervisory authority over the solid waste collection industry.
*68 Waste Management contests the rule, N.J.A.C. 14:3-11.8(e)(4), which provides that contracts for residential services must permit the consumer to terminate the contract on thirty days notice. The legitimacy of this rule can readily be implied from the Regulatory Reform Act's expressly stated purpose to protect the consumer and to provide for a state supervisory role to that end. N.J.S.A. 48:13A-7.2. Constitutional objections have been eliminated by the DEPE's indication that it will not apply the rule to existing contracts. Possible conflict with the public bidding laws has been avoided by the DEPE agreeing that the rule will not be applied to publically bid contracts. The rule is a proper and reasonable exercise of the DEPE's authority to supervise the industry in a manner which will safeguard the interests of the consumer.
The remaining challenged rules relate essentially to notice, filing and other procedural requirements. The absence of these provisions in the Regulatory Reform Act is not significant. Such procedural matters are often handled by rule rather than by statute. The requirements do not appear onerous. The DEPE has set forth in its brief ample justification for these rules. Their function and purpose are in accord with the agency's broad statutory grant of supervisory authority over the solid waste collection industry.
The rules are not impermissibly vague. See State v. Cameron, 100 N.J. 586, 593-594, 498 A.2d 1217 (1985); In re Adoption of N.J.A.C. 7:1E, 255 N.J. Super. 469, 605 A.2d 733 (App.Div. 1992). The rules are certainly not vague in all their applications and therefore are not facially vague; nor are we persuaded that the rules are or will be impermissibly vague in their application. A statute or rule "effecting economic regulation" is subject to a less strict vagueness test. See Cameron, supra, 100 N.J. at 592, 498 A.2d 1217. One reason for this relaxed standard is that the regulated enterprise may have the ability to clarify the meaning of the regulation by inquiry or by administrative process. Ibid.
*69 One modification of the rules should be made. In the past, review by the DEPE has sometimes taken inordinate time. We gather from the Deputy Attorney General's statements at oral argument that the DEPE would not object to being required to complete its various reviews and determinations under the challenged rules within thirty days of the filing of an application. The rules are accordingly so modified. Applicants before administrative agencies are entitled to fair treatment and that includes a prompt disposition of their applications.
In sum, we uphold the challenged rules as modified by the thirty day disposition requirement. The DEPE's authority to adopt these rules for the period of transition from rate regulation to rate deregulation is reasonably implied in the Regulatory Reform Act and is consistent with its terms and purposes, especially with the broad authority given the DEPE to supervise the solid waste collection industry and to direct the flow of solid waste in New Jersey.