696 A.2d 95

PRESTIA REALTY INC., PLAINTIFF–APPELLANT,
v. HARTZ MOUNTAIN INDUSTRIES, INC.,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 28, 1997—Decided July 10, 1997.

Before Judges DREIER and D'ANNUNZIO.

*Stephen L. Klein* argued the cause for appellant.

*D. Mark Leonard* argued the cause for respondent (*Horowitz, Rubino & Patton,* attorneys; *Mr. Leonard* on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Plaintiff, Prestia Realty Inc., appeals from the dismissal of its amended complaint for failure to state a claim upon which relief can be granted, *R.* 4:6–2(e), and the denial of its motion for reconsideration.[1] In 1990, plaintiff brokered a lease agreement between 3–V Chemical Corporation as lessee and defendant, Hartz Mountain Industries, Inc., as lessor. Under the underlying brokerage agreement, plaintiff was entitled to an initial real estate commission as well as an additional commission upon renewal. In 1995, plaintiff learned that the lease had been renewed; however, no commission had been paid. Plaintiff therefore commenced this action against the lessor to recover its commission. In the interim between the lease and the renewal, however, plaintiff's real estate license lapsed, and defendant successfully contended in the trial court that *N.J.S.A.* 45:15–3 prevented plaintiff from maintaining this action.

---

[1] Plaintiff's motion to amend its complaint a second time was denied at the same time as its motion for reconsideration. However, the denial of that motion is not before us.

■ The statute provides:

> No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly authorized real estate broker *at the time the alleged cause of action arose.*
>
> [*N.J.S.A.* 45:15–3 (emphasis added).]

The statute was interpreted by the Real Estate Commission in a regulation, *N.J.A.C.* 11:5–1.10i, which states that the language "at the time the alleged cause of action arose" in the statute is deemed "to mean at the time that the brokerage services which form the basis for the alleged claim to compensation were rendered." *N.J.A.C.* 11:5–1.10i(1). The regulation further states specifically that the statute does not require that the commission claimant be licensed at the time the commission was to be paid. *N.J.A.C.* 11:5–1.10i(2). This regulation, by its clear terms, would have specifically authorized the commission in the case before us:

> [T]he Commission does not construe this language as requiring licensure at the time of the renewal of a lease to enable a claimant to sue for compensation based upon a promise, made or in effect when the lease was originally executed, to pay additional consideration to the claimant in the event that the lease was renewed.
>
> [*Ibid.*]

When the trial judge granted defendant's motion, she stated in her initial order of July 12, 1996, that the "[c]lear meaning of *N.J.S.A.* 45:15–3 cannot be diluted or altered by Commission's interpretation of *N.J.A.C.* 11:5–1.10. Cause of action did not arise until renewal was signed." In her order of September 13, 1996, denying the motion for reconsideration, she stated further:

> Order of 7/12/96 stands. Plaintiff relies [on] *N.J.A.C.* interpretation which is flawed. Clear meaning of the *N.J.A.C.* provision is that broker must have held a valid license at time of lease renewal to make this claim. Same reasons as previously stated.

We cannot agree with the judge's interpretation of the statute. We must construe what the Legislature meant by requiring the claimant to be "a duly authorized real estate broker *at the time the alleged cause of action arose.*" *N.J.S.A.* 45:15–3 (emphasis added). The use of the term "cause of action" might have meant at the time the broker obtained a right to a renewal commission without further action on the broker's part, subject to the later

agreement of the parties to the lease. Alternatively, the language could refer to the time of an actual renewal, or even to a later time when a demand for the commission was denied by the owner. It was only at this latest time that there technically was a "cause of action" in the sense of "a group of operative facts ... giving rise to one or more rights of action." Brian A. Garner, *A Dictionary of Modern Legal Usage* 140 (2nd Ed.1995). The term "right of action" is there defined as "the right to take a particular case to court." *Ibid.* But here we must look at the purpose of the act to determine whether the words were intended to be used in their technical sense. Sometimes reading a legislative enactment literally will destroy its intent. As we stated in *Essex Crane Rental Corp. v. Director, Division on Civil Rights,* 294 *N.J.Super.* 101, 682 *A.*2d 750 (App.Div.1996):

> We also are cognizant of the principle that "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" And "where a literal reading of the statute leads to absurd consequences, 'the court must restrain the words' and seek the true legislative intent." Moreover, in construing a statute, we assume that the Legislature intended a reasonable approach, and the statute should be construed to effect a reasonable approach.
>
> [*Id.* at 106, 682 *A.*2d 750 (quoting *Schierstead v. City of Brigantine,* 29 *N.J.* 220, 230–31, 148 *A.*2d 591 (1959)) (other citations omitted).]

In *Schierstead,* the Court also applied to statutory construction "Judge Learned Hand's well-known remark that 'there is no surer way to misread any document than to read it literally.'" 29 *N.J.* 220, 231, 148 *A.*2d 591 (1959) (citation omitted).

■ After reviewing this act, it appears to us that the preferred meaning is the one contained in the Real Estate Commission's regulation. An administrative agency has the power to clarify ambiguous statutes by promulgating regulations. *See Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327, 478 *A.*2d 742 (1984) ("[A]gency's interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable"); *see also Waste Management of Cent. Jersey, Inc. v. State, D.E.P.E.,* 278 *N.J.Super.* 56, 64, 650 *A.*2d 379 (App.Div.1994). Here, the language of the statute is at some variance with its evident

purpose and therefore was a proper subject of a clarifying regulation. The purpose of the statute clearly is to protect the public by preventing the practice of the real estate profession by unlicensed persons. But in the case before us, the right to the future commission was absolute when the original contract was signed, subject only to the future actions of the landlord and tenant, over whom plaintiff had no control. The Real Estate Commission has recognized the equity of permitting the receipt of commissions in such a case.

■ As plaintiff points out, any other meaning renders the statute totally unreasonable. If a broker, as here, negotiated a base lease and also negotiated the right to be paid a commission upon each renewal and then died, should this statute be read as extinguishing the broker's estate's rights to the renewal commission? We think not. The same is true of a retired or mentally unsound former broker. We can and should interpret the language "at the time the alleged cause of action arose" as meaning the time when the right to be paid a commission, present or future, was established, subject to any later actions of the landlord and tenant.[2]

■ In this case, plaintiff was a licensed broker when the initial lease was signed and the right to renewal commissions was established, provided that the landlord and tenant later determined to renew the lease. No further efforts were needed on the part of plaintiff, and therefore the presence or absence of a real estate license, or even whether the broker (if an individual) is still living, should be irrelevant to the payment of the commission. The Real Estate Commission correctly noted this in its regulation.

The language of the Supreme Court in *Tobias v. Comco/America, Inc.,* 96 *N.J.* 173, 475 *A.*2d 40 (1984), although arising under distinguishable facts, has direct applicability here:

---

[2] We take no position whether an unlicensed former broker forfeits any commission by negotiating the renewal term at the time it becomes effective. That issue is not before us.

Defendants appear to be sophisticated businessmen experienced in real estate transactions. From that perspective, foreclosing plaintiff from maintaining her cause of action would frustrate rather than fulfill the purpose of the act, the protection of consumers from unscrupulous brokers. Dismissal of the complaint would convert the statute from a shield to protect the public into a sword to cut off a broker's right to an earned commission.

[*Id.* at 182, 475 *A.*2d 40 (citation omitted).]

The order dismissing plaintiff's complaint is reversed, and the matter is remanded to the Law Division for further proceedings.